2008 ME 10

**E. PERRY IRON & METAL CO., INC.**

v.

**CITY OF PORTLAND.**

Supreme Judicial Court of Maine.

Argued: Oct. 23, 2007.
Decided: Jan. 15, 2008.

Marshall J. Tinkle, Esq., David Hirshon, Esq., Tompkins, Clough, Hirshon & Langer, P.A., Portland, ME, for the appellant.

Gary C. Wood, Esq., Penny Littell, Esq. City of Portland, Office of Corporation Counsel, Portland, ME, for the appellee.

Rebecca Warren Steel, Esq., Maine Municipal Association, Augusta, ME, for amicus curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1]  E. Perry Iron & Metal Co., Inc., appeals from a judgment of the Superior Court (Cumberland County, *Delahanty, J.*) entering judgment in favor of the City of Portland. It argues that the Superior Court incorrectly found the City's scrap

metal recycling facility ordinance was not preempted by state statute and was not unconstitutional under the Maine and U.S. Constitutions. We affirm the judgment.

## I. BACKGROUND

[¶ 2] E. Perry Iron & Metal Co., Inc. has operated a scrap metal recycling facility in Portland for decades, and since the 1980s it has held an annual operating license from the City under the Junkyard and Automobile Graveyard statute (junkyard statute). 30–A M.R.S. §§ 3751–3760 (2007). In the fall of 2004, the City enacted its Scrap Metal Recycling Facilities ordinance (SMRF ordinance), which closely regulated scrap metal recycling facilities. Perry alleges that the enactment of this ordinance followed a breakdown in negotiations between it and the City regarding the redevelopment of the neighborhood in which Perry operates and the relocation of Perry's operations.

[¶ 3] In September 2004, the City took no action to process Perry's junkyard permit renewal application. Perry filed a complaint in December 2004 seeking relief and challenging the City's failure to take action, and the Superior Court ruled that Perry was entitled to a renewed permit, effective through September 30, 2006. We dismissed the City's subsequent appeal as interlocutory. *E. Perry Iron & Metal Co., Inc. v. City of Portland,* 2006 ME 52, ¶ 8, 896 A.2d 956, 959.

[¶ 4] Following this dismissal, the parties submitted the matter to the trial court on briefs. The Superior Court found that Perry is in the business of recycling scrap metal, accepts ferrous and nonferrous metals, and handles batteries, which contain hazardous materials.

[¶ 5] Perry argued that the SMRF ordinance is preempted by the Maine Hazardous Waste, Septage and Solid Waste Management Act, 38 M.R.S. §§ 1301–1319–Y (2007) (Solid Waste Act), and that if it is not preempted, it is unconstitutional on the following grounds: as a violation of state and federal equal protection guarantees; as a violation of substantive due process rights; as a taking of private property without compensation; and as a violation of the commerce clause of the United States Constitution. The City argued that the SMRF ordinance was permitted by the junkyard statute and that it is not unconstitutional.[1]

[¶ 6] The trial court found that the SMRF ordinance was not preempted by the Solid Waste Act and that it was not unconstitutional. Perry has filed the instant appeal.

## II. DISCUSSION

### A. Relevant Law

[¶ 7] Three statutes have a bearing on this case. First, since the 1980s, Perry has been licensed under the junkyard statute, which sets minimum requirements for the operation of junkyards and related facilities, and which permits municipalities to regulate aspects of their operations. *See* 30–A M.R.S. §§ 3753, 3754–A. Second, the Solid Waste Act regulates the operation of solid waste facilities and requires a permit for the operation of such a facility. *See* 38 M.R.S. § 1310–N. Third, the home rule statute grants municipalities the authority expressed in the home rule provision of the Maine Constitution, providing them the authority to "exercise any power

---

1. The City's argument that the SMRF ordinance is simply a valid exercise of home rule authority permitted under the junkyard statute is not compelling. The junkyard statute is not an affirmative grant of authority; it only states that it does not limit a municipality's home rule authority. 30–A M.R.S. § 3754–A(7) (2007).

or function ... which is not denied expressly or by clear implication...." 30-A M.R.S. § 3001 (2007).

[¶ 8] Maine's junkyard statute clearly applies to Perry's operations. The parties stipulated that Perry recycles scrap metal, which places Perry within the definition of "junkyard" under the statute. 30-A M.R.S. § 3752(4)(C) (a "junkyard" is an area used to, among other things, "dismantle ... scrap ferrous or nonferrous material"). Further, the parties have operated for years on the assumption that the junkyard statute applied: Perry repeatedly applied for, and the City repeatedly granted, the permit required by the junkyard statute. 30-A M.R.S. § 3753. Under this statute, the City's home rule authority is not affected; the statute explicitly states that it does not impinge on a municipality's home rule authority. 30-A M.R.S. § 3754-A(7).

■ [¶ 9] The Solid Waste Act also regulates the handling of waste. It defines "solid waste" as any discarded or useless, non-liquid, solid material that is not hazardous, biomedical, septic, or agricultural waste. 38 M.R.S. § 1303-C(29). The fact that waste or material may have market value does not exclude it from this definition. *Id.* A "solid waste facility" is one that handles solid waste, with some exclusions for facilities that burn waste to dispose of it or to produce energy. 38 M.R.S. § 1303-C(31).[2] "Handle" is defined so as to include recycling. 38 M.R.S. § 1303-C(14).

■ [¶ 10] The Maine Department of Environmental Protection has adopted

rules under the Solid Waste Act. 3 C.M.R. 06 096 400-1 to 42 (2001) (Rules). A license is required to operate a solid waste facility in the state. 38 M.R.S. § 1310-N; 3 C.M.R. 06 096 400-12 § 2(A)(1). The DEP is directed to issue a license for a solid waste facility when it is clear that the facility "will not contaminate any water of the State, contaminate the ambient air, constitute a hazard to health or welfare, or create a nuisance." 3 C.M.R. 06 096 400-15 § 3(D); 38 M.R.S. § 1310-N(1)(A). Among other things, an applicant for a license must demonstrate that it has the financial and technical ability to operate, maintain, and close the facility; that the applicant can provide for traffic movement; that the facility must not unreasonably affect air quality; that there will be no discharge of any pollutants without a state license, and in any case, may not discharge any pollutant that would affect surface water quality or pose an unreasonable risk to ground water aquifers; and that there will be no unreasonably adverse effect on other natural resources. 3 C.M.R. 06 096 400-16 to 23 § 4(B)-(D), (6)-(I), (K).

[¶ 11] In regulating solid waste facilities, municipalities may not adopt standards stricter than relevant state law. 38 M.R.S. § 1310-U. "[M]unicipalities ... may enact ordinances with respect to solid waste facilities that contain standards the municipality finds reasonable ... provided that the standards are *not more strict than* those contained in this chapter and in [38 M.R.S. §§ 480-A to BB, 481-490] and the rules adopted under these articles."[3] *Id.* (emphasis added).

---

**2.** A "solid waste disposal facility" is defined as a facility that incinerates or buries solid waste. 38 M.R.S. § 1303-C(30) (2007). There is no evidence that Perry would fit within the definition of a "solid waste disposal facility."

**3.** There is another set of prohibitions in the first paragraph of section 1310-U, but because these prohibitions relate solely to "solid waste disposal facilities," they are not relevant and are not considered here.

[¶ 12] The SMRF ordinance defines a scrap metal recycling facility as:

> an area used to receive, process, or store any form of metal that is already scrap for recycling or reuse and which handles, removes, or disposes of waste as part of the processing. The definition shall include an automobile recycling facility as defined in 30–A M.R.S.A. § 3752(1–A).

Portland, Me., Code § 31–4 (Jan. 1, 2005). It requires that anyone operating such a facility have an annual license. Portland, Me., Code § 31–5. Rules implementing the SMRF ordinance were promulgated by the City's department of planning and development. These rules require baseline groundwater and soil testing, and any required remediation following such testing; they regulate the dismantling of motor vehicles and other items containing waste and the handling of waste; and they dictate setbacks and visual screens.

## B. Analysis

[¶ 13] Issues of law are reviewed de novo. *Peterson v. State Tax Assessor,* 1999 ME 23, ¶ 6, 724 A.2d 610, 612. The interpretation of a local ordinance is a question of law. *Logan v. City of Biddeford,* 2006 ME 102, ¶ 8, 905 A.2d 293, 295. In interpreting a statute or ordinance, reviewing courts "look first to the plain language of the provisions to be in-terpreted." *Gensheimer v. Town of Phippsburg,* 2005 ME 22, ¶ 22, 868 A.2d 161, 167.

[¶ 14] Home rule is granted to municipalities by the Maine Constitution and by statute. ME. CONST. art. VIII, pt. 2, § 1; 30–A M.R.S. § 3001.[4] The home rule statute states that it is to be liberally construed to effect its purposes, that there is a presumption in favor of home rule, and that preemption is not to be implied unless local action would frustrate the purposes of state law. *Id.* "Only where the municipal ordinance prevents the efficient accomplishment of a defined state purpose should a municipality's home rule power be restricted, otherwise [municipalities] are free to act to promote the well-being of their citizens." *School Comm. v. Town of York,* 626 A.2d 935, 938 n. 8 (Me.1993); 30–A M.R.S. § 3001(3).

[¶ 15] "[T]he inquiry on a pre-emption question is whether the local action would frustrate the purpose of any state law." *Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden,* 2000 ME 179, ¶ 27, 760 A.2d 257, 263–64 (quotation marks omitted). Local action will be preempted by implication where it "prevents the efficient accomplishment of a defined state purpose...." *School Comm.,* 626 A.2d at 938 n. 8; *see also*

---

4. The home rule statute reads, in part:

Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.

1. LIBERAL CONSTRUCTION. This section, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to effect its purposes.

2. PRESUMPTION OF AUTHORITY. There is a rebuttable presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority.

3. STANDARD OF PREEMPTION. The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

30–A M.R.S. § 3001(2007).

*Cent. Me. Power Co. v. Town of Lebanon,* 571 A.2d 1189, 1194–95 (Me.1990).

[¶ 16] The purposes of the Solid Waste Act are clearly stated. 38 M.R.S. § 1302. These include: "establish[ing] a coordinated statewide waste reduction, recycling and management program"; "pursu[ing] and implement[ing] an integrated approach to hazardous and solid waste management"; "prefer[ing] waste management options with lower health and environmental risk"; and noting that "sound environmental policy and economics of scale dictate a preference for ... implementation on a regional and state level." *Id.*

[¶ 17] Previously, we have preempted local action when it conflicted with the Solid Waste Act. In *Sawyer,* where the expansion of a solid waste facility was prohibited by the town after it had been approved by the Department of Environmental Protection, local action was found to be preempted because it frustrated the purposes of the Solid Waste Act. *Sawyer,* 2000 ME 179, ¶ 33, 760 A.2d at 265–66. In *Midcoast Disposal, Inc. v. Town of Union,* 537 A.2d 1149, 1151 (Me.1988), a town ordinance prohibiting waste facilities from accepting out-of-town wastes was preempted because it was at odds with the purposes of the Solid Waste Act.

[¶ 18] Here, local action is far more circumscribed and there is no evidence that it frustrates the purposes of the Solid Waste Act. First, there is no evidence that the Solid Waste Act applies here. While it is true that Perry fits within the letter of the Solid Waste Act's definition of "solid waste facility," there is no evidence that the State or the DEP is treating it as such. There is no evidence that Perry is licensed by the DEP as a

solid waste facility; that it has applied for a license under the Solid Waste Act or its Rules; or that Perry would meet the licensure criteria and be permitted to operate under the Solid Waste Act.[5] More generally, there is no evidence that the State or the DEP regulate scrap metal facilities through the Solid Waste Act.

[¶ 19] If Perry and any other scrap metal facilities are not treated as solid waste facilities by the State and the DEP, the fact that they are regulated by the SMRF ordinance cannot frustrate the purpose of the Solid Waste Act. The SMRF ordinance, simply stated, does not affect the operation of the Solid Waste Act on these facts. That the SMRF ordinance may place a burden on Perry or other similar facilities is not evidence that it frustrates the purposes of the Solid Waste Act.

[¶ 20] Second, assuming that the Solid Waste Act is implicated here, there is no evidence in the record from which we can conclude that the City enacted stricter standards than those promulgated in the Solid Waste Act. Central to this analysis is the meaning of the word "standards" as used in 38 M.R.S. § 1310–U. Perry complains of the rigorous testing elements of the SMRF ordinance and the projected attendant expense. It asserts that these procedures are more extensive and, as such, are "more strict" than the requirements of the Solid Waste Act. Perry misapprehends the language of the statute.

[¶ 21] The adjective "stricter" modifies the noun "standards" in the Solid Waste Act. As such, our analysis must start with a comparison of the standards established in the Solid Waste Act and the standards established in the SMRF ordinance to determine whether the local standards are

**5.** Perry suggests in its brief that it would be "grandfathered" from compliance with the Solid Waste Act.

more strict. Unfortunately, the record in this matter does not permit a side-by-side comparison of the standards that are alleged to be in conflict.

[¶ 22] The Solid Waste Act establishes certain standards for the issuance of solid waste facility licenses at 38 M.R.S. § 1310–N. As with other provisions and regulations, this legislation establishes certain specific, quantitative minimum requirements (or standards) for the operation of solid waste facilities. For example, an automobile dismantling operation may not receive a solid waste facility license if it is larger than three acres and is located within one hundred feet of a well that serves a public or private water supply. 38 M.R.S. § 1310–N(2–E). A local ordinance could not establish a two-hundred-foot buffer zone because this would amount to a stricter standard. The word "standard" in the context of section 1310–U relates to the quantitative levels, distances, practices, and other measurable criteria deemed necessary to prevent and contain pollution and contamination.

[¶ 23] The mere fact that a local ordinance may establish a procedure that is more rigorous than the State's procedures does not, ipso facto, render the SMRF ordinance invalid. In contrast, if a specific provision of a local ordinance established a quantitative standard that was more strict than that provided by the Solid Waste Act, that provision would not be enforceable.

In this instance, the extensive testing requirements of the SMRF ordinance cannot be said to be more strict than any standard established by the Solid Waste Act. They may be more extensive, and perhaps more expensive, but these factors do not constitute quantitative environmental *standards* that can be said to be more "strict" than anything prescribed by statute or rule. As the record does not reflect SMRF standards that are stricter than those established in the Solid Waste Act, the SMRF ordinance is not preempted by the Solid Waste Act.[6]

[¶ 24] There is a rebuttable presumption that action taken pursuant to the home rule statute is a valid exercise of authority. 30–A M.R.S. § 3001(2). Perry has not presented evidence that rebuts this presumption. *See School Comm.*, 626 A.2d at 942 (noting the appellant's failure to articulate how local action frustrated statutory purpose). Simply asserting that the SMRF ordinance is more strict than the Solid Waste Act is insufficient.

[¶ 25] Third, and notwithstanding the above, the fundamental point remains that there is no evidence that the SMRF ordinance frustrates the purposes of the Solid Waste Act. Unlike the relevant ordinances in *Sawyer* and *Midcoast,* the scope of the SMRF ordinance is fairly narrow. It does not challenge the role of the State or the DEP in making the ultimate decision in

---

**6.** Perry suggests that the issue of whether the SMRF ordinance establishes stricter standards than the Solid Waste Act is easily resolved by a reference in the trial court decision that includes as a finding of fact: "The SMRF ordinance was first drafted in 2002 for the purpose of imposing stricter environmental protection standards on facilities handling scrap metal. R.I at 15, p. 1–2, R.II at 71 pp. 62–63 & R.II at 75 p. 28, II. 16–21." *E. Perry Iron & Metal Co., Inc. v. City of Portland,* 2007 WL 1523495, 2007 Me.Super. Lexis 19, *6 (Feb. 6, 2007). Without reaching the proposition of whether the record citations actually support the finding, it is uncertain whether the Superior Court was comparing the "strictness" of the proposed ordinance to the Solid Waste Act or to the previously existing standards established in the junkyard statute that had controlled to date. Additionally, it is unclear whether the City's consultant, John Tewhey, was speaking of specific standards or generalized hardship when he characterized the SMRF ordinance as being more strict than the state statute.

licensing facilities; it does not categorically remove land from use as a solid waste facility; and, in regulating scrap metal recycling facilities, it only focuses on a small subset of solid waste facilities.

## C. Constitutional Arguments

[¶ 26] Perry makes several constitutional arguments.[7] Legislation is presumed to be constitutional and the party challenging it has the burden of proof to demonstrate otherwise. *Maine Beer & Wine Wholesalers Ass'n, v. State,* 619 A.2d 94, 97 (Me.1993).

[¶ 27] Perry argues that the SMRF ordinance violates the Equal Protection Clause of the United States Constitution and the comparable provision of the Maine Constitution because the SMRF ordinance is not rationally related to a legitimate governmental purpose. U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6–A. These provisions are to be read coextensively. *Green v. Comm'r of Mental Health & Mental Retardation,* 2000 ME 92, ¶ 21 n. 4, 750 A.2d 1265, 1272.

[¶ 28] Because the SMRF ordinance at issue does not involve fundamental rights or suspect classes, it will survive such a constitutional challenge if its classification is rationally related to a legitimate governmental purpose. *School Admin. Dist. No. 1 v, Comm'r, Dep't of Educ.,* 659 A.2d 854, 857 (Me.1995). At this level of review, there is a strong presumption of validity and the facts justifying the policy do not need to be actually relied on by the Legislature; any conceivable set of facts supporting the legislation is sufficient. *Id.;* *Aseptic Packaging Council v. State,* 637 A.2d 457, 459–60 (Me.1994). The state has no burden to present facts demonstrating the rationality of its policy, *id.* at 460, while the party challenging the SMRF ordinance has the burden of proof "to negative conceivable basis which might support [the law]," *FCC v. Beach Comm., Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (quotation marks omitted); *Aseptic Packaging Council,* 637 A.2d at 460.

[¶ 29] Here, the SMRF ordinance bears a rational relationship to a legitimate government end—controlling a source of pollution within the city—and Perry has not shown by clear and irrefutable evidence that the SMRF ordinance is arbitrary or irrationally discriminatory.

7. Perry presents three constitutional arguments not discussed above. First, it argues that the SMRF ordinance violates substantive due process under the Fourteenth Amendment to the U.S. Constitution and the Maine Constitution. U.S. CONST. amend. XIV § 1; ME. CONST. art. I, § 6–A. Perry has not met its burden of proof to show that the SMRF ordinance is invalid, *Warren v. Municipal Officers,* 431 A.2d 624, 628 (Me.1981), nor "establish[ed] the complete absence of any state of facts that would support the need for the enactment," *Tisei v. Town of Ogunquit,* 491 A.2d 564, 569 (Me.1985).

Second, it argues that the SMRF ordinance constitutes a taking. This argument is without merit as there is no showing that the SMRF ordinance either deprives Perry of all economically beneficial uses of the property, *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 330, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002), or decreases the value of the property so substantially so as to strip the property of all practical value, *Wyer v. Bd. of Envtl. Prot,* 2000 ME 45, ¶ 1, 747 A.2d 192, 193.

Third, Perry argues that the SMRF ordinance violates the Commerce Clause by discriminating against interstate commerce. U.S. CONST. art. I, § 8, cl. 3. Where a regulation only indirectly affects interstate commerce, it will be upheld where the state has a legitimate interest and where the burden on interstate commerce is outweighed by the local benefits. *Aseptic Packaging Council v. State,* 637 A.2d 457, 461 (Me.1994). The party challenging the statute or regulation has the burden of proof. *City of Auburn v. Tri–State Rubbish, Inc.,* 630 A.2d 227, 234 (Me. 1993). Perry has not met this burden.

[¶ 30] Perry further argues that the SMRF ordinance was selectively enforced and is therefore violative of equal protection. To prevail on such a claim, it must demonstrate that an otherwise similarly situated person was treated differently than others and that this treatment was based on either impermissible considerations or on a bad faith intent to injure that person. *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen,* 932 F.2d 89, 92 (1st Cir.1991); *State v.Dhuy,* 2003 ME 75, ¶¶ 16–17, 825 A.2d 336, 343. Proving such discriminatory intent is "an onerous burden." *B & B Coastal Enters. Inc. v. Demers,* 276 F.Supp.2d 155, 171 (D.Me. 2003). Differential treatment alone is not enough to prove discriminatory intent. *Yerardi's Moody St. Rest. & Lounge, Inc.,* 932 F.2d at 92. "[U]nreasonable inferences based on conjecture or speculation"

need not be accepted. *Id.* (quotation marks omitted).

[¶ 31] Perry's evidence is not sufficient. Its argument, based on the fact that the SMRF ordinance was passed while the City was negotiating with Perry regarding its operations and possible relocation outside the city, and on the statements of a single city councilor during that time, is insufficient to demonstrate that the City's motivation for the SMRF ordinance was premised on bad faith.

The entry is:

Judgment affirmed.