MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 122
Docket:       Yor-13-478
Argued:       September 10, 2014
Decided:      November 4, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
              JJ.

DUBOIS LIVESTOCK, INC.

v.

TOWN OF ARUNDEL et al.

ALEXANDER, J.

[¶1]  Dubois Livestock, Inc., appeals from a judgment of the Superior Court (York County, *O'Neil, J.*) affirming, pursuant to M.R. Civ. P. 80B, the decision of the Town of Arundel's Zoning Board of Appeals (ZBA), which upheld a notice of violation that the Town's code enforcement officer issued to Dubois for failure to comply with its conditional use permit.  Dubois argues that (1) its appeal to the ZBA was not time-barred because it raises a jurisdictional issue, which can be raised at any time; and (2) the Town did not have the authority to regulate Dubois's operation because section 8.10.B.1 of the Town of Arundel Land Use Ordinance (2013) (the Ordinance)[1] is preempted by state law, specifically by the Maine

---

[1]  The Town of Arundel Land Use Ordinance (the Ordinance) was most recently amended on June 12, 2013.  However, none of the provisions relevant to the instant case were amended then, and all relevant language in the Ordinance remains the same as it has been throughout the pendency of this action.

2

Agriculture Protection Act (Agriculture Protection Act), 7 M.R.S. §§ 151-163 (2013), and the Maine Hazardous Waste, Septage and Solid Waste Management Act (Solid Waste Act), 38 M.R.S. §§ 1301-1319-Y (2013).[2] We affirm.

## I. CASE HISTORY

[¶2] On a parcel in zone "R-4" in Arundel, Dubois composts horse and cow manure, horse and cow bedding, and fish waste (including fish, shellfish entrails, shells, and bones), none of which are generated on-site. Dubois's original 1999 solid waste order from the Maine Department of Environmental Protection (DEP) allowed it to receive 1,733 tons of fish waste and 3,467 tons of horse manure annually. In 2012, the DEP order was amended to allow Dubois to receive not more than 29,000 tons of total material annually, including cow manure and bedding in addition to the materials noted above. Dubois's operation was permitted when it began in 1981 and is now a nonconforming use in the Arundel R-4 zone. In 2000, section 6.2 of the Ordinance was amended to prohibit solid waste processing in the R-4 zone.

[¶3] Pursuant to the Ordinance, the operator of any "solid waste facility" in the Town is required to obtain a conditional use permit, which must be reviewed

---

[2] To the extent that Dubois's arguments on appeal extended beyond its jurisdictional challenge to the Town's authority to regulate its operation, those arguments are time-barred for failure to raise them within thirty days of the conditional use permit's issuance, and thus are not discussed. *See* Ordinance § 10.3.C; M.R. Civ. P. 80B(b); *see also Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 15, 868 A.2d 172. Those arguments constitute an after-the-fact collateral attack on the 2011 conditional use permit.

and renewed every three years. Ordinance §§ 8.10.B.1, 8.10.B.3. Accordingly, Dubois applied for a conditional use permit from the Town Planning Board. The Board issued a conditional use permit to Dubois on February 24, 2000. On February 24, 2011, the Town reissued a conditional use permit to Dubois.

[¶4] The 2011 permit is the subject of this appeal. Among other conditions, the permit required Dubois to provide the Town with bills of lading and an annual summary report documenting the amount of material processed at and shipped from the facility each year, pursuant to section 8.10.F.2.e of the Ordinance. The permit also required Dubois to allow the code enforcement officer and town planner to inspect certain parts of the facility annually, accompanied by Dubois representatives, to ensure the facility's proper working order and compliance with the conditional use permit. Dubois did not appeal from the issuance of the 2011 conditional use permit, as was its right pursuant to Ordinance § 10.3.C and M.R. Civ. P. 80B.

[¶5] After the 2011 permit was issued, Dubois contacted the Maine Department of Agriculture (DOA) and the DEP to determine the potential impact of the Agriculture Protection Act and the Solid Waste Act on its operations. Based on the information Dubois provided, the DOA and DEP issued opinion letters in July and December of 2011, respectively, stating that Dubois's facility is an "agricultural composting operation" under the Agriculture Protection Act and the

4

Solid Waste Act. The DOA also stated that Dubois is a "farm" as defined in its Rules for the Agricultural Compliance Program. 1 C.M.R. 01 001 010-1 § 2(12) (2007).[3] "Agriculture," as defined in section 2.2 of the Ordinance, is unconditionally permitted in zone R-4, unlike solid waste processing. Ordinance § 6.2.

[¶6] In 2012, Town representatives attempted to gather information from Dubois and inspect the composting facility pursuant to the 2011 conditional use permit, but Dubois refused to provide the information or permit the inspection. The Town's code enforcement officer issued a notice to Dubois on October 30, 2012, informing Dubois that it was in violation of the 2011 permit and section 8.10.F.2.e of the Ordinance. Dubois timely appealed the notice of violation to the Town of Arundel's ZBA, which held a hearing in January 2013. At that hearing, Dubois admitted that it refused to comply with the conditions imposed by the 2011 permit but argued that it was not subject to regulation by the Town pursuant to the

---

[3] The Rules for the Agricultural Compliance Program define a "farm" as "[t]he land, buildings and machinery used in the commercial production of farm products." 1 C.M.R. 01 001 010-1 § 2(12) (2007). The Rules further define farm products as "[a]nimals, as well as food, feed, fiber, forage and oilseed crops that are useful to humans, including but not limited to, forages and sod crops, grains and food crops, dairy products, poultry and poultry products, bees, livestock and livestock products, manure or compost, and fruits, berries, vegetables, flowers, seeds, grasses, fuel crops and other similar products." *Id.* § 2(14). The definition of "farm products" in the Agricultural Compliance Program differs from the definition of "agricultural products" in the Agriculture Protection Act. *See* 7 M.R.S. § 152(2)(2013); *infra* ¶ 14.

Ordinance or the permit, because state laws, specifically the Agriculture Protection Act and the Solid Waste Act, preempt the Ordinance.[4]

[¶7] On January 10, 2013, the ZBA voted to deny Dubois's appeal. In its written findings and conclusions, the ZBA upheld the code enforcement officer's notice of violation because Dubois admitted to violating the conditions of the 2011 permit. Despite concluding that Dubois's appeal was time-barred, the ZBA went on to conclude that, if the appeal was not time-barred, neither the Agriculture Protection Act nor the Solid Waste Act preempted the Ordinance.[5] The record does not indicate that the Town has initiated any enforcement action pursuant to M.R. Civ. P. 80K to address the violations found by the code enforcement officer and affirmed by the ZBA.

[¶8] On February 8, 2013, Dubois filed a timely Rule 80B complaint challenging the ZBA's decision. M.R. Civ. P. 80B. After a hearing, the court

---

[4] Dubois raised other arguments on appeal to the ZBA, but those arguments were time-barred for the reasons discussed *supra* n.2.

[5] The ZBA first concluded that it did not have jurisdiction to decide the preemption issue. It then went on to conclude that, if it did have jurisdiction, state law did not preempt the ordinance. We agree that the ZBA did not have jurisdiction to decide the issue of preemption. Pursuant to state law, municipal boards of appeal may assert jurisdiction only over the "precise subject matter" specified in the town charter or ordinance at issue. 30-A M.R.S. § 2691(4) (2013); 30-A M.R.S. § 4353(1) (2013) (stating that ZBAs are governed by section 2691). The Ordinance does not state that the ZBA has jurisdiction to decide preemption issues. Ordinance § 10.3. *Cf. Minster v. Town of Gray*, 584 A.2d 646, 648 (Me. 1990) ("A zoning board of appeals does not have the statutory authority to determine the validity of a legislative enactment.").

6

affirmed the ZBA's decision on September 19, 2013.[6] Dubois timely appealed

from the Superior Court's decision pursuant to 5 M.R.S. § 11008(1) and M.R.

Civ. P. 80B(n).

## II. LEGAL ANALYSIS

A.    Justiciability

[¶9]  Even though the parties have not raised the issue, we must, in light of

our recent precedents, first address whether this appeal is justiciable.  Under those

precedents, an appeal of a notice of violation would be dismissed as calling for an

advisory opinion.  *See Eliot Shores, LLC v. Town of Eliot*, 2010 ME 129, ¶¶ 1, 8,

9 A.3d 806; *Farrell v. City of Auburn*, 2010 ME 88, ¶¶ 1, 8, 3 A.3d 385 (each

dismissing an 80B appeal from a notice of violation because, no matter how we

ruled, the municipality retained discretion to initiate, or decline to initiate, a Rule

80K enforcement action).   Some recent developments require review of that

precedent.

[¶10]  In 2012, the United States Supreme Court held in *Sackett v. EPA*,

566 U.S. ---, 132 S. Ct. 1367 (2012), that an Environmental Protection Agency

"compliance order," the equivalent of a municipal notice of violation, was a final

agency action subject to judicial review because the order affected the use of the

---

[6]  The Superior Court affirmed the ZBA's conclusion that it did not have jurisdiction to decide the preemption issue and independently concluded that the Agriculture Protection Act and the Solid Waste Act did not preempt the Ordinance.

property at issue and appeal was the only adequate remedy. *Id*. at 1372-74; *see also Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595-96 (Me. 1986) (holding that a court may reach the merits in a declaratory judgment action when an agency decision, although a notice or advisory opinion, can affect property uses). Here, like the compliance order at issue in *Sackett*, or the agency opinion at issue in *Annable*, the notice of violation affects the use, and may affect the value, of the property, and Dubois's only remedy, absent a Rule 80K action to defend, is appeal.

[¶11] We also recognize that in 2013, the Maine Legislature enacted P.L. 2013, ch. 144, amending 30-A M.R.S. § 2691(4) (2013), to allow appeals to the Superior Court, pursuant to M.R. Civ. P. 80B, from municipal notices of violation after local administrative reviews of the notice of violation have been exhausted. In light of the reasoning in *Sackett* and section 2691(4), which expressly provides for appeals to the Superior Court from notices of violation, we reach the merits of this appeal.

B.    Timeliness

[¶12] Contrary to the Town's contentions, Dubois's appeal to the ZBA was not untimely. "Subject to equitable defenses including laches, a governmental action may be challenged *at any time*, as ultra vires, when the action itself is beyond the jurisdiction or authority of the administrative body to act." *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 12, 868 A.2d 172 (emphasis added). Here,

8

Dubois contends that the Town lacked jurisdiction to regulate its operations pursuant to Ordinance § 8.10.B.1 and the conditional use permit issued under it because state laws, specifically the Agriculture Protection Act and the Solid Waste Act, preempt the Ordinance. Thus, Dubois's contention that, as a matter of law, the Town did not have jurisdiction to regulate Dubois is not untimely.

C.    Preemption

[¶13]  "The issue of whether a [s]tate statute preempts municipal regulation is a question of law that we review de novo." *State v. Brown*, 2014 ME 79, ¶ 23, 95 A.3d 82.  Pursuant to the "home rule" provision of 30-A M.R.S. § 3001 (2013), a municipality may exercise its authority to adopt an ordinance if that power is not "denied either expressly or by clear implication" under state law.  *See E. Perry Iron & Metal Co. v. City of Portland*, 2008 ME 10, ¶ 7, 941 A.2d 457.  Local ordinances are presumptively valid, 30-A M.R.S. § 3001(2), and an ordinance will be invalidated only "when the Legislature has expressly prohibited local regulation, or when the Legislature has intended to occupy the field and the municipal legislation would frustrate the purpose of a state law," *Int'l Paper Co. v. Town of Jay*, 665 A.2d 998, 1001-02 (Me. 1995).  Accordingly, "[an] ordinance will be preempted only when state law is interpreted to create a comprehensive and exclusive regulatory scheme inconsistent with the local action," *Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 27, 760 A.2d 257,

or when "the municipal ordinance prevents the efficient accomplishment of a defined state purpose," *E. Perry Iron & Metal Co.*, 2008 ME 10, ¶ 14, 941 A.2d 457.

1.    Agriculture Protection Act

[¶14]  Although not stated explicitly, the scope of the Agriculture Protection Act indicates a purpose to support the viability of agriculture in Maine by ensuring that farms employing best management practices are not deemed to be public or private nuisances or to be in violation of local law if they are in compliance with state and federal law.  *See* 7 M.R.S. §§ 153, 154, 1-A (2013).  Accordingly, the Agriculture Protection Act provides that, if a farm or farm operation is using best management practices, a locality cannot find that a "method of operation used by a farm or farm operation located in an area where agricultural activities are permitted" violates a municipal ordinance.  *Id.* § 154.[7]

[¶15]  The Agriculture Protection Act defines a "farm" as "the land, plants, animals, buildings, structures, ponds and machinery used in the commercial production of agricultural products."  *Id.* § 152(5).  The Act defines "agricultural

---

[7]    By the plain language of the statute, this particular protection is not extended to agricultural composting operations.  7 M.R.S. § 154 (2013).  Agricultural composting operations are expressly included in section 153, which protects a "farm, farm operations, *or agricultural composting operation*" from being "considered a public or private nuisance."  7 M.R.S. § 153 (2013) (emphasis added).  This would suggest that the omission in section 154 was intentional.  *See Wescott v. Allstate Ins.* 397 A.2d 156, 168-69 (Me. 1979) (when terms included in one section of a law are not included in another section of a law, omission may be deemed intentional).

products" as including a variety of plant and animal products, and any plant, animal, or plant or animal product that supplies people with "food, feed, fiber or fur," but does not expressly include compost, manure, or similar products. *Id.* § 152(2). The Agriculture Protection Act separately defines "agricultural composting operation" as "composting that takes place on a farm." *Id.* § 152(1).

[¶16] Given these definitions, Dubois is not a "farm" for purposes of the Agriculture Protection Act. Dubois does not produce "agricultural products," as defined by the Agriculture Protection Act, on site. Instead, it imports thousands of tons of materials, including fish waste from seafood processors, horse manure and bedding from Scarborough Downs, and cow manure and other materials from various off-site locations. Creating a product like compost, which may be used by landscapers, home gardeners, and perhaps farmers, does not make Dubois a "farm" for purposes of section 154 protection. Further, under the Act's definitions, Dubois must be a "farm" in order to be an "agricultural composting operation." Even if it could be an "agricultural composting operation" without being a "farm," agricultural composting operations are omitted from the section 154 prohibition of municipalities finding that a farm's method of operation violates a local ordinance. *See supra* n.7. Pursuant to both the Agriculture Protection Act and the Ordinance,

farms that compost their own byproducts are treated differently from operations that compost organic waste created off-site. *See* Ordinance § 2.2.[8]

[¶17]  Even if Dubois's operation were a farm, the Agriculture Protection Act does not preempt the Town's Ordinance.  Although the Act prohibits a municipality from determining that a farm's method of operation violates a local ordinance if the farm has used "best management practices," there is no indication that, in enacting the Agriculture Protection Act, the Legislature intended to preempt any ordinance or occupy the field.  In fact, the Agriculture Protection Act explicitly states that it "does not affect municipal authority to enact ordinances." 7 M.R.S. § 155.

[¶18]  The Ordinance also does not frustrate the purpose of the Agriculture Protection Act.  The Act aims to protect farms using best practices from nevertheless having their methods of operation considered to be in violation of local regulations, and Dubois did not meet its burden of demonstrating that the Ordinance would frustrate this goal.  The conditional use permit allowed representatives from the Town to inspect Dubois's premises to ensure that the compost pad was intact and that the facility was in compliance with the permit (some version of which had been in effect since 2000).  Dubois made no showing

---

[8]  The Ordinance expressly exempts composting of animal manure "generated on the site" from the definition of a solid waste processing facility.  Ordinance § 2.2.

12

that it was following best practices when it violated the Ordinance by failing to report its annual intake to the Town or to allow Town representatives to inspect its premises.

[¶19]  In sum, the Agriculture Protection Act does not preempt the Ordinance because the Legislature has expressly allowed local regulation and thus has not expressed a clear intent to occupy the field, and the Town's Ordinance does not frustrate the purpose of the Act.

2.    Solid Waste Act

[¶20]  The purposes of the Solid Waste Act are stated in 38 M.R.S. § 1302. These include pursuing and establishing an "integrated approach to hazardous and solid waste management," with a preference for "implementation on a regional and state level," and preferring "waste management options [that carry] lower health and environmental risk[s]."  38 M.R.S. § 1302; *E. Perry Iron & Metal Co.*, 2008 ME 10, ¶ 16, 941 A.2d 457.  The Solid Waste Act promotes waste composting.  38 M.R.S. § 1302.

[¶21]  The Solid Waste Act establishes a "comprehensive regulatory scheme" of solid waste management laws.  *Smith v. Town of Pittston*, 2003 ME 46, ¶ 26, 820 A.2d 1200.  However, title 38 M.R.S. § 1310-U[9] of the Solid Waste Act

---

[9]  Title 38 M.R.S. § 1310-U was amended by P.L. 2011, ch. 655, § GG-15 (effective July 1, 2012), after the 2011 conditional use permit was issued pursuant to Ordinance § 8.10.B.1, but the amendment does not affect the legal analysis of this case.

states that, under home rule authority, a municipality "may enact ordinances with respect to solid waste facilities that contain standards the municipality finds reasonable . . . *provided that the standards are not more strict* than those contained in [the Solid Waste Act] and the rules adopted [thereunder]." (Emphasis added.) Additionally, "[m]unicipal ordinances must use definitions *consistent* with those adopted by the [Board of Environmental Protection]." 38 M.R.S. § 1310-U (emphasis added). Therefore, despite the Solid Waste Act's stated preferences for regional and state level solid waste management implementation and for waste composting, "[t]he Legislature could not state more clearly its intention not to occupy the field" in waste management matters as long as the local regulation meets section 1310-U's requirements. *Int'l Paper Co.*, 665 A.2d at 1002-03 (interpreting similar language in 38 M.R.S.A. § 597 (1989), now 38 M.R.S. § 597 (2013)).

[¶22] To determine whether the Ordinance's standards are stricter than those established in the Solid Waste Act and the DEP regulations promulgated thereunder, we directly compare the standards established in the Ordinance and in the Act. *See E. Perry Iron & Metal Co.*, 2008 ME 10, ¶ 21, 941 A.2d 457. "The word 'standard' in the context of section 1310-U relates to the quantitative levels, distances, practices, and other measurable criteria deemed necessary to prevent and contain pollution and contamination." *Id.* ¶ 22. Ordinance § 8.10.F.2.a provides

that all "processing facilities," which includes Dubois, must be "designed, located and operated in strict compliance with" the standards set forth in the rules promulgated pursuant to the Act that are applicable to all solid waste facilities, *see* 2 C.M.R. 06 096 400 (2011), and those that are applicable specifically to processing facilities, *see* 2 C.M.R. 06 096 409 (2011). Therefore, the standards set out in the Ordinance are the same as, and not stricter than, those imposed under the Solid Waste Act for solid waste facilities that are processing facilities.[10]

[¶23] Further, the Ordinance's definitions are consistent with the Solid Waste Act and DEP definitions. Ordinance § 8.10.B.1 requires that all "solid waste facilities" obtain conditional use permits, just as solid waste facilities are required to obtain licenses under the Act and DEP regulations. *See* 38 M.R.S. § 1310-N; 2 C.M.R. 06 096 400-10 to -11 § 2 (2010). The Ordinance defines "solid waste facility" and solid waste "processing facility," and terms incorporated therein, nearly identically to, or in some cases less stringently than, the definitions in the Act and rules promulgated under the Act. *Compare* Ordinance § 2.2, *with*

---

[10] Contrary to Dubois's contentions, the Ordinance's requirement that a facility have its conditional use permit reissued every three years is not a stricter standard, and is not evidence that the Ordinance does not comply with 38 M.R.S. § 1310-U. *See E. Perry Iron & Metal Co. v. City of Portland*, 2008 ME 10, ¶¶ 20-23 & n.6, 941 A.2d 457. Although such a process may be more expensive for Dubois, such factors of "generalized hardship" or of more rigorous procedure are not evidence that the Ordinance conflicts with State law and is therefore preempted. *Id.* ¶ 23 & n.6.

38 M.R.S. § 1303-C(29), (31), (32-A), *and* 2 C.M.R. 06 096 400-6 § 1(Gg) (2010), *and* 2 C.M.R. 06 096 400-8 § 1(Kkk) (2011).

[¶24]  In sum, the Solid Waste Act does not preempt the Ordinance because (1) the standards in the Ordinance are not stricter than those in the Act; (2) the Ordinance's definitions are not inconsistent with those in the Act; and (3) the Ordinance's provisions do not frustrate the purpose of the Act.

[¶25]  Because state law does not preempt the Ordinance, the Ordinance is presumed valid, the Town had jurisdiction to act, and the Town's action taken pursuant to the Ordinance in regulating Dubois and issuing Dubois a notice of violation for failure to comply with the conditional use permit is not ultra vires.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Scott D. Giese, Esq., Law Office of Scott D. Giese, Biddeford,
for appellant Dubois Livestock, Inc.

Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk,
for appellees Town of Arundel et al.

16

**At oral argument:**

L. Clinton Boothby, Esq., Boothby Perry, LLC, Turner, for appellant Dubois Livestock, Inc.

Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, for appellees Town of Arundel et al.

York County Superior Court docket number AP-13-4
For Clerk Reference Only