MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 125
Docket:      Fed-20-40
Argued:      September 16, 2020
Decided:     October 29, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.

PORTLAND PIPE LINE CORPORATION et al.

v.

CITY OF SOUTH PORTLAND et al.

MEAD, J.

[¶1]  Portland Pipe Line Corporation's (PPLC's) plan to pipe crude oil from its facility in Canada to the City of South Portland, where it then would be loaded onto tankers in the City's harbor, was thwarted when the City enacted a "Clear Skies Ordinance," amending the City's zoning ordinance by prohibiting the "[b]ulk loading of crude oil onto any marine vessel."  South Portland, Me., Ordinance 1-14/15 § 3 (July 7, 2014); *see Portland Pipe Line Corp. v. City of South Portland*, 947 F.3d 11, 13-14 (1st Cir. 2020).  After the United States District Court for the District of Maine (*Woodcock, J.*) entered summary judgment against PPLC and American Waterways Operators[1] (collectively PPLC) on their

---

[1]  The complaint identifies American Waterways Operators as "the national trade association for the nation's inland and coastal tugboat, towboat, and barge industry."

complaint seeking a declaration that, inter alia, the Ordinance was preempted by 38 M.R.S. § 556 (2020), *Portland Pipe Line Corp. v. City of South Portland*, 288 F. Supp. 3d 322, 456-58 (D. Me. 2017), PPLC appealed to the United States Court of Appeals for the First Circuit, which has certified three questions of state law to us pursuant to 4 M.R.S. § 57 (2020) and M.R. App. P. 25:

(1) Is PPLC's license an "order," as that term is used in [38 M.R.S.] § 556?

(2) If PPLC's license is an order, is the City of South Portland's Clear Skies Ordinance preempted by [38 M.R.S.] § 556 of Maine's Coastal Conveyance Act?

(3) Independent of [38 M.R.S.] § 556, is there any basis for finding that Maine's Coastal Conveyance Act impliedly preempts the City of South Portland's Clear Skies Ordinance?

*Portland Pipe Line Corp.*, 947 F.3d at 18-19.

[¶2] We answer the first and third questions in the negative and decline to answer the second question.

## I. FACTS AND PROCEDURE

[¶3] In its opinion certifying the three questions now before us, the Court of Appeals stated that the relevant facts and procedural background are "undisputed." *Id.* at 13. For years, PPLC unloaded crude oil from ships in South Portland's harbor, stored it in above-ground tanks, and then sent it via a largely underground pipeline to Montréal. *Id.* Due to a change in demand,

beginning in or around 2007, PPLC began to seek necessary approvals to reverse the flow of oil in the pipeline so that it could send oil from Montréal to South Portland and from there load it onto ships in the City's harbor for distribution in the United States. *Id.*

[¶4]    After PPLC received approval for the change from the federal government, *id.*, in 2010 the Maine Department of Environmental Protection (MDEP) renewed PPLC's marine oil terminal facility license, originally issued in 1979, noting that

> PPLC is proposing a change in its operations in the renewal application.  PPLC is proposing to reverse one of its underground pipe lines to transport oil from its terminal in Montreal Canada to its terminal in South Portland, Maine.  The oil would be stored in the above ground tanks prior to being loaded on vessels at the South Portland pier for transport to refineries and terminals outside the [S]tate of Maine.

The City's Planning Board also approved the change. *Id.* at 14.  In a subsequent renewal of PPLC's license, the MDEP restated that the license "allows PPLC to receive oil from Montreal, Canada by underground and aboveground pipe lines to the South Portland oil terminal facility for storage prior to being loaded onto vessels."

[¶5]    Despite receiving regulatory approval in 2010, PPLC halted the reversal project, "choosing instead to wait out the economic decline

4

precipitated by the Great Recession." *Id.* PPLC revived the project in 2012 and 2013 as economic conditions improved, but the enactment of the Ordinance by the City in 2014 effectively halted further operations. *Id.*

[¶6] In 2015, PPLC filed suit against the City and its code enforcement director (collectively the City) in the United States District Court for the District of Maine, seeking to bar enforcement of the Ordinance on largely federal grounds. *Id.* at 14 & n.5. Relevant to the First Circuit's certification, Count IX of the complaint alleged that the Ordinance is preempted by Maine's Coastal Conveyance Act (the Act),[2] 38 M.R.S. §§ 541-560 (2020), specifically section 556 (the statute).[3] *Id.*

[¶7] After the City unsuccessfully moved to dismiss the complaint, the parties filed cross-motions for summary judgment. *Portland Pipe Line Corp.*, 947 F.3d at 15. The District Court granted the City's motion as to all but one count and entered summary judgment for the City on, inter alia, Count IX. *Id.*; *see Portland Pipe Line Corp.*, 288 F. Supp. 3d at 458-59. After the remaining

---

[2] The original enactment of the subchapter of the statutes now captioned "Oil Discharge Prevention and Pollution Control," 38 M.R.S., subchapter 2-A, was entitled "An Act Relating to Coastal Conveyance of Petroleum." P.L. 1969, ch. 572, § 1 (effective May 9, 1970). *See Portland Pipe Line Corp. v. Env't Improvement Comm'n*, 307 A.2d 1, 8 (Me. 1973).

[3] Count VIII of the complaint, alleging that the Ordinance is inconsistent with the City's comprehensive plan, *see* 30-A M.R.S. § 4352 (2020), is not at issue here. *Portland Pipe Line Corp. v. City of South Portland*, 947 F.3d 11, 14 n.5 (1st Cir. 2020).

count was dismissed following trial, PPLC appealed. *Portland Pipe Line Corp.*, 947 F.3d at 15.

[¶8] Concluding that answers in the affirmative "would resolve the state law preemption claim [stated in Count IX] and this matter as a whole," and that "the case lacks controlling precedent and presents close and difficult legal issues that warrant certification to the Law Court," *id.* (alteration and quotation marks omitted), the First Circuit certified to us the three questions that we now address. *Id.* at 15, 18-19; *supra* ¶ 1.

## II. DISCUSSION

A. Acceptance of the Certified Questions

[¶9] Because "4 M.R.S. § 57 authorizes, but does not require, us to consider a certified question of state law posed by a federal court in certain circumstances," *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 7, 157 A.3d 223 (quotation marks omitted), "[a] threshold issue is whether we will agree to consider the certified questions," *Doherty v. Merck & Co., Inc.*, 2017 ME 19, ¶ 8, 154 A.3d 1202. We have said that

> we may consider the merits of a certified question from the [federal court] and, in our discretion, provide an answer if (1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case.

6

*Doherty*, 2017 ME 19, ¶ 8, 154 A.3d 1202 (alteration and quotation marks omitted).

[¶10]   Here, the First Circuit stated that the material facts are "undisputed" and that, were we to hold that Maine law preempts the Ordinance, that determination would "resolve . . . this matter as a whole." *Portland Pipe Line Corp.*, 947 F.3d at 13, 15.  We have not had occasion to construe 38 M.R.S. § 556.  Accordingly, we agree to consider the certified questions.  *See Doherty*, 2017 ME 19, ¶ 8, 154 A.3d 1202.

B.    Question One

[¶11]  The statute provides:

Nothing in [the Coastal Conveyance Act] may be construed to deny any municipality, by ordinance or by law, from exercising police powers under any general or special Act; provided that ordinances and bylaws in furtherance of the intent of [the Act] and promoting the general welfare, public health and public safety are valid unless in direct conflict with [the Act] or any rule or order of the board or commissioner adopted under authority of [the Act].

38 M.R.S. § 556.  The first certified question asks us whether PPLC's MDEP license is a Departmental "order" within the meaning of the statute. *Portland Pipe Line Corp.*, 947 F.3d at 18.

[¶12]  We conclude that it is not.  That said, we note that the court's certification went further than a request for a bare "yes" or "no" answer in

saying, "We would welcome further guidance from the Law Court on any other relevant aspect of Maine law that it believes would aid in the proper resolution of the issues before us." *Id.* at 19. We accept the First Circuit's invitation to expound on our answer to the first question because we also conclude that the Ordinance is not "in direct conflict with" the MDEP license granted to PPLC, even if the license were, arguendo, an "order." 38 M.R.S. § 556.

[¶13] The Legislature explicitly declared its intent in enacting the Coastal Conveyance Act:

> The Legislature intends by the enactment of this legislation to exercise the police power of the State through the Department of Environmental Protection by conferring upon the department the power to deal with the hazards and threats of danger and damage posed by [oil] transfers and related activities; to require the prompt containment and removal of pollution occasioned thereby; to provide procedures whereby persons suffering damage from those occurrences may be promptly made whole; and to establish a fund to provide for the inspection and supervision of those activities and guarantee the prompt payment of reasonable damage claims resulting therefrom.

38 M.R.S. § 541. The Act further sets out the respective powers of the MDEP, the Board and Commissioner of Environmental Protection, and other state officials to effect that purpose. *See* 38 M.R.S. §§ 361-A(1-E), (1-G), 544-545, 546-551, 552-A, 553, 555, 560 (2020).

8

[¶14]  Nothing in the Ordinance is in "direct conflict" with the MDEP's exercise of the State's police power pursuant to the Act.  38 M.R.S. §§ 541, 544-545, 556; *see 20 Thames St. LLC v. Ocean State Job Lot of Me. 2017, LLC*, 2020 ME 55, ¶ 8, 231 A.3d 426 ("In examining [a] statute . . . we construe its terms to give effect to the Legislature's intent in enacting the statute." (quotation marks omitted)).  The Ordinance does not purport to require the MDEP to do anything that the Act says it may not do, nor does it bar the MDEP from doing what the Act says that it may do.  The MDEP's authority to set and enforce licensing standards through physical inspections and the examination of an applicant's records is unchallenged.

[¶15]  Furthermore, as the District Court found, "it is not impossible to comply with both the Ordinance and the License."  *Portland Pipe Line Corp.*, 288 F. Supp. 3d at 458.  The license permits, and the Ordinance does not forbid, transporting oil from the City's harbor via pipeline to Canada as PPLC has always done. *See Portland Pipe Line Corp.*, 947 F.3d at 13.

[¶16]  Because there is no "direct conflict" between the Ordinance and the MDEP's approval of PPLC's compliance with Departmental standards for reversing the flow of oil in one of its pipelines, it is immaterial whether that approval is termed a "license" or an "order."  *See* 38 M.R.S. § 556.  That said,

although that determination could end our inquiry, we think it necessary to address the first certified question directly, and in so doing we further conclude that PPLC's license is not an "order" within the meaning of the statute.

[¶17]   The Ordinance bars a single activity that the MDEP's approval *allowed* but did not *require*—loading crude oil from storage tanks onto marine tank vessels in the City's harbor.  Black's Law Dictionary defines a "license" as "[a] permission."  *License*, Black's Law Dictionary (11th ed. 2019); *see also License*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014) (defining a "license" as "permission to act").  The Legislature's definition of "license" in Maine's Administrative Procedure Act is consistent: "'License' includes . . . any agency permit, certificate, approval . . . or similar *form of permission* required by law . . . ."  5 M.R.S. § 8002(5) (2020) (emphasis added).  In contrast, an "order" is "[a] command, direction, or instruction."  *Order*, Black's Law Dictionary.  "We . . . give [a] statute's words their plain, common, and ordinary meaning, such as people of common intelligence would usually ascribe to them." *20 Thames St. LLC*, 2020 ME 55, ¶ 8, 231 A.3d 426 (quotation marks omitted).

[¶18]   Here, although the words "Department Order" appear in the header on the first page of the "Renewal License" issued to PPLC in 2010,[4] the

---

[4] In contrast to the single use of "Department Order," the words "Renewal License" appear on each page of the document.

license does not "command, direct[], or instruct[]" PPLC to do anything other than "fill rodent burrows and remove soil from the base of the [storage] tanks" before conducting permitted activities. *See Order*, Black's Law Dictionary. That the license was not an "order" is demonstrated by the fact that PPLC, although authorized in 2010 to reverse the flow of oil in the pipeline, did not do so, but rather "[chose] instead to wait out the economic decline precipitated by the Great Recession." *Portland Pipe Line Corp.*, 947 F.3d at 14. If the license were an "order," PPLC would not have had the option to simply set it aside.

[¶19] We conclude that the license PPLC received is not a Departmental "order" within the meaning of 38 M.R.S. § 556. It is more precisely a permit that allowed PPLC to reverse the flow of oil in the pipeline at its discretion— a permit that was granted through the procedural vehicle of an MDEP-issued order. For that reason, and because the Ordinance is not in "direct conflict" with the Act or the license, we answer question one in the negative.

B.    Question Two

[¶20] The second certified question is premised on an affirmative answer to question one. *Portland Pipe Line Corp.*, 947 F.3d at 18-19. Because we answer question one in the negative, we decline to answer the second certified question.

C.    Question Three

[¶21]  The third certified question asks us to determine whether the Act as a whole preempts the Ordinance by implication.  *Id.*  We conclude that it does not.

[¶22]   Maine's Coastal Conveyance Act unambiguously declares that municipal ordinances concerning oil terminal facilities "are valid" unless they directly conflict with the Act or rules or orders made pursuant to it.  38 M.R.S. § 556.  The Legislature made the presumption of a local ordinance's validity particularly strong by explicitly invoking constitutional municipal home rule authority at the outset of the statute: "Nothing in [the Act] may be construed to deny any municipality, by ordinance . . . from exercising [its] police powers . . . ."  *Id.*; *see* Me. Const. art. VIII, pt. 2, § 1;  30-A M.R.S. § 3001 (2020).[5]

---

[5]  The "home rule" clause of the Maine Constitution provides: "The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character.  The Legislature shall prescribe the procedure by which the municipality may so act."  Me. Const. art. VIII, pt. 2, § 1.

The statute enabling the constitutional home rule guarantee provides:

> Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.
>
> **1. Liberal construction.**   This section, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to effect its purposes.

12

[¶23]  In *Dubois Livestock, Inc. v. Town of Arundel*, we said that

> [p]ursuant to the "home rule" provision of 30-A M.R.S. § 3001 . . . a municipality may exercise its authority to adopt an ordinance if that power is not denied either expressly or by clear implication under state law.  Local ordinances are presumptively valid, 30-A M.R.S. § 3001(2), and an ordinance will be invalidated only when the Legislature has expressly prohibited local regulation, or when the Legislature has intended to occupy the field and the municipal legislation would frustrate the purpose of a state law. Accordingly, an ordinance will be preempted only when state law is interpreted to create a comprehensive and exclusive regulatory scheme inconsistent with the local action or when the municipal ordinance prevents the efficient accomplishment of a defined state purpose.

2014 ME 122, ¶ 13, 103 A.3d 556 (alteration and quotation marks omitted), *superseded in part by statute*, 30-A M.R.S. § 2691(4) (2020), *as recognized in Paradis v. Town of Peru*, 2015 ME 54, ¶ 7, 115 A.3d 610; *see E. Perry Iron & Metal Co., Inc. v. City of Portland*, 2008 ME 10, ¶ 14, 941 A.2d 457; *City of Bangor v. Diva's, Inc.*, 2003 ME 51, ¶¶ 21, 24, 830 A.2d 898.  The Legislature's grant of home rule authority, grounded in the Maine Constitution, *see* Me. Const.

---

**2. Presumption of authority.** There is a rebuttable presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority.

**3. Standard of preemption.**  The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

. . . .

30-A M.R.S. § 3001 (2020).

art. VIII, pt. 2, § 1, "shall be liberally construed to effect its purposes." 30-A M.R.S. § 3001(1).

[¶24]  Here, far from being "expressly prohibited," *Dubois Livestock, Inc.*, 2014 ME 122, ¶ 13, 103 A.3d 556 (quotation marks omitted), the City's home rule authority to enact the Ordinance is expressly recognized and affirmed by Maine's Coastal Conveyance Act.  38 M.R.S. § 556.  The Act also establishes that the Legislature did not intend to occupy the field; to the contrary, it explicitly declares that the Ordinance "[is] valid" except in one narrow circumstance— a "direct conflict" with the Act or a rule or order adopted pursuant to the Act. *Id.*  Further, the MDEP anticipated local regulation when it issued a license conditioned on PPLC's fulfillment of its obligation to "secure and comply with all applicable . . . *local* licenses [and] permits . . . prior to . . . operation." (Emphasis added.)

[¶25]  Finally, the Ordinance does not "frustrate the purpose of a state law" or  "prevent[] the efficient accomplishment of a defined state purpose," *Dubois Livestock, Inc.*, 2014 ME 122, ¶ 13, 103 A.3d 556 (quotation marks omitted); *see* 30-A M.R.S. § 3001(3), because the foundational purposes of the Act and the Ordinance are the same.  In setting out the purpose of the Act, the Legislature stated that it

finds and declares that the highest and best uses of the seacoast of the State are as a source of public and private recreation and solace from the pressures of an industrialized society, and as a source of public use and private commerce in fishing, lobstering and gathering other marine life used and useful in food production and other commercial activities.

The Legislature further finds and declares that the preservation of these uses is a matter of the highest urgency and priority . . . .

The Legislature further finds and declares that the transfer of oil, petroleum products and their by-products between vessels and vessels and onshore facilities . . . are hazardous undertakings; that spills, discharges and escape of oil, petroleum products and their by-products occurring as a result of procedures involved in the transfer, storage and other handling of such products pose threats of great danger and damage to the marine, estuarine, inland surface water and adjacent terrestrial environment of the State; to owners and users of shorefront property; to public and private recreation; to citizens of the State and other interests deriving livelihood from marine and inland surface water related activities; and to the beauty of the Maine coast and inland waters; that such hazards have frequently occurred in the past, are occurring now and present future threats of potentially catastrophic proportions, all of which are expressly declared to be inimical to the paramount interests of the State as set forth in this [Act] . . . .

38 M.R.S. § 541. The declared purpose of the Ordinance dovetails with the stated purpose of the Act:

This Ordinance is enacted, consistent with the City's traditional land use authority, to protect the health and welfare of its residents and visitors and to promote future development consistent with the City's Comprehensive Plan by prohibiting within the City the bulk loading of crude oil onto marine tank vessels, and also by prohibiting construction or installation of related facilities,

structures, or equipment that would create significant new sources of air pollution, adversely impact or obstruct ocean views and scenic view-sheds, and impede or adversely impact the City's land use and planning goals.

South Portland, Me., Ordinance 1-14/15 § 2.

[¶26]   Because in enacting 38 M.R.S. § 556 the Legislature expressly recognized municipalities' authority to exercise their police power and in so doing made clear that it did not intend to occupy the field in this area, and because the Ordinance does not conflict with the purpose of the Act, the strong presumption that the Ordinance is valid remains.  *Id.*; *see* 30-A M.R.S. § 3001; *Dubois Livestock, Inc.*, 2014 ME 122, ¶ 13, 103 A.3d 556.  Accordingly, the Act does not preempt the statute by implication, and we answer the third certified question in the negative.

The entry is:

> We answer the certified questions as follows: "We answer the first and third certified questions in the negative.  We decline to answer the second certified question."

16

John J. Aromando, Esq., Matthew D. Manahan, Esq., and Nolan L. Reichl, Esq. (orally), Pierce Atwood LLP, Portland, for appellants Portland Pipe Line Corporation and American Waterways Operators

Sally J. Daggett, Esq., Jensen Baird Gardner & Henry, Portland, and Jonathan M. Ettinger, Esq. (orally), Euripides Dalmanieras, Esq., and Jesse H. Alderman, Esq., Foley Hoag LLP, Boston, Massachusetts, for appellees City of South Portland and Matthew LeConte

Patrick Strawbridge, Esq., Consovoy McCarthy PLLC, Boston, Massachusetts, for amici curiae Chamber of Commerce of the United States of America, Portland Pilots, Inc., Maine Energy Marketers Association, Associated General Contractors of Maine, and Association of Oil Pipe Lines

Aaron M. Frey, Attorney General, and Laura E. Jensen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for amicus curiae State of Maine

Susanne F. Pilgrim, Esq., Maine Municipal Association, Augusta, and Sarah J. Fox, Esq., Northern Illinois University College of Law, DeKalb, Illinois, for amici curiae International Municipal Lawyers Association, Sara Bronin, Nestor Davidson, Keith Hirokawa, Ashira Ostrow, Dave Owen, Laurie Reynolds, Jonathan Rosenbloom, and Sarah Schindler

Sean Mahoney, Esq. and Phelps Turner, Esq., Conservation Law Foundation, Portland for amici curiae Conservation Law Foundation and Protect South Portland

United States Court of Appeals for the First Circuit docket number 18-2118
FOR CLERKS REFERENCE ONLY