STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-16-32 ✓

SOIL PREPARATION, INC.,                    )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )
                                           )
TOWN OF PLYMOUTH,                          )
                                           )
            Defendant.                     )
                                           )

ORDER ON PLAINTIFF'S MOTION
FOR PARTIAL RECONSIDERATION

Plaintiff Soil Preparation, Inc. ("SPI") has moved for partial reconsideration of the court's March 28, 2017 order denying Plaintiff's motion for summary judgment on Counts I, III, V of its complaint and granting summary judgment for Defendant Town of Plymouth (the "Town") on those counts pursuant to Maine Rule of Civil Procedure 56(c). For the following reasons, SPI's motion for partial reconsideration is granted.

## BACKGROUND

As set forth in the court's March 28, 2017 order on SPI's motion for summary judgment, SPI operates a solid waste facility in Plymouth, Maine licensed by the Maine Department of Environmental Protection ("DEP"). SPI receives and processes septage, sludge, and other materials from several municipalities, quasi-municipal entities, and licensed haulers throughout Maine.

On March 19, 2016, the Town adopted "An Ordinance Regulating Solid Waste Facilities" (the "Solid Waste Ordinance" or "Ordinance"). On or about May 9, 2016, the Town sent a letter to SPI informing it of the new Solid Waste Ordinance and instructing SPI to submit an application for a new permit to the Planning Board. SPI filed a complaint against the Town on July 28, 2016. SPI's complaint set forth seven counts for declaratory judgment challenging the

validity and applicability of the Ordinance and two civil rights claims pursuant to 42 U.S.C. § 1983. The Town answered on August 26, 2016. This matter was subsequently transferred to the Business and Consumer Court.

During a telephonic conference with the court on December 14, 2016, SPI represented to the court that Counts I, III, and V of its complaint presented dispositive legal issues that could be decided without discovery. The court stayed discovery and set a briefing schedule for SPI to submit a motion for summary judgment on Counts I, III, and V. SPI filed its motion for summary judgment on January 9, 2017. SPI requested that the court enter summary judgment declaring: (1) that the authority the Town intends to exercise pursuant to the Solid Waste Ordinance exceeds the powers allowed by the Legislature pursuant to 38 M.R.S. § 1310-U of the Maine Hazardous Waste, Septage and Solid Waste Management Act (the "Solid Waste Act") (Count I); (2) that § 1310-U specifies the areas in which municipalities can impose standards, that the Ordinance exceeds those areas, and that Ordinance is therefore invalid (Count III); and (3) that, pursuant to the terms of § 1.2 of the Ordinance, the Town's Solid Waste Ordinance does not apply to SPI's pre-existing facility (Count V).

On March 28, 2017, the court entered an order denying SPI's motion for summary judgment on Counts I, III, and V. In its order, the court rejected SPI's arguments regarding § 1310-U and its interpretation of the Ordinance. The court also entered summary judgment in favor of the Town on Counts I, III, and V pursuant to Maine Rule of Civil Procedure 56(c).

SPI filed a motion of partial reconsideration on April 7, 2017. SPI does not object to the court's denial of its motion for summary judgment. (Pl. Mot. Reconsider 2, 6.) SPI only requests that the court vacate its entry of summary judgment for the Town. (*Id.* at 8.) The Town

2

filed an opposition on April 21, 2017. SPI filed its reply on April 28, 2017. Oral argument was held on May 5, 2017.

## STANDARD OF REVIEW

Motions for reconsideration are permitted to bring to the court's attention an error, omission, or new material that could not previously have been presented. M.R. Civ. P. 7(b)(5). A motion to reconsider a judgment shall be treated as motion to alter or amend the judgment. M.R. Civ. P. 59(e). The court will grant a motion to amend the judgment if "it is reasonably clear that prejudicial error has been committed or that substantial justice has not been done." *Cates v. Farrington*, 423 A.2d 539, 541 (Me. 1980).

## ANALYSIS

SPI asserts that its motion for summary judgment was not comprehensive, but rather, limited to certain, discrete issues of law appropriate for summary judgment. (Pl. Reply 1-2.) SPI contends that the court's entry of summary judgment in favor of the Town as the non-moving party was overly broad because it precluded SPI from litigating any further legal or factual issues that may arise under Counts I, III, and V. (Pl. Mot. Reconsider 6.)

Count I of SPI's complaint seeks a declaratory judgment that the Solid Waste Ordinance exceeds the authority granted by the Legislature under § 1310-U and § 1305(6) of the Solid Waste Act. (Compl. ¶¶ 38-43; Pl. Mot. Summ. J. 2.) Count III of SPI's complaint seeks a declaratory judgment that § 1310-U specifies the areas in which municipalities can impose standards on solid waste facilities, that the Ordinance exceeds those areas, and that Ordinance is therefore invalid (Count III). (Compl. ¶¶ 53-64; Pl. Mot. Summ. J. 2.)

SPI's motion for summary judgment argued that that § 1310-U expressly or by clear implication preempted the Town's municipal home rule authority to adopt ordinances regarding

solid waste management. (Pl. Mot. Summ. J. 15, 18.) SPI further argued that, although § 1310-U preempted municipal authority, the statute permitted municipalities to adopt ordinances in the limited areas identified therein. (*Id.* at 14.) SPI argued that the Town's Solid Waste Ordinance exceeded the authority permitted to it under § 1310-U because (1) the Ordinance claims authority "coterminous" with the State's authority, (2) the Ordinance subjects existing facilities to permitting requirements by treating them like new facilities, and (3) § 8.2 and § 8.4 of the Ordinance claim *de facto* authority for the Town to enforce State and Federal enforcement and licensing decisions. (*Id.* at 19-21.) The court rejected these arguments for the reasons stated in its March 28, 2017 order.

In its motion for reconsideration, SPI contends that, in addition to allegations regarding § 1310-U, Count I also included allegations that the Ordinance exceeds the limits on municipal authority by § 1305(6) of the Solid Waste Act. (Pl. Reply 6; Compl. ¶ 40.) SPI argues it did not raise § 1305(6) as part of its motion for summary judgment and that it is now precluded from litigating any claims regarding § 1305(6) under Count I. (Pl. Reply 7-8.) SPI also contends that the court's order precludes it from arguing under Count I that the Town has exceeded its authority to adopt standards under § 1310-U in ways not addressed in the motion for summary judgment. (*Id.* at 8-9.) Specifically, SPI asserts it should not be precluded from arguing that the Town exceeded its authority under § 1310-U by incorporating into its Ordinance DEP standards that were adopted by DEP under authority other than Chapter 13 of Title 38 and Articles 5-A and 6 of Chapter 3 of Title 38. (*Id.*)

Regarding Count III, SPI asserts that its motion for summary judgment did not argue that any particular standards in the Ordinance were "more strict than" those allowed under § 13010-U because SPI sought to challenge only the Town's authority to enact the Ordinance in the first

4

place. (*Id.* at 10.) SPI contends that the wording of the Ordinance could be challenged as "more strict than" the standards set forth in Chapter 13 of Title 38 by applying the Solid Waste Act's standards to existing facilities. (*Id.* at 9-10.) SPI also contends that certain quantitative standards in the Ordinance may actually be "more strict than" that those set forth in the applicable statutes or rules. (*Id.* at 10-12.) SPI asserts that the court's entry of summary judgment on Count III precludes it from raising these arguments. (*Id.*)

Count V of SPI's complaint seeks a declaratory judgment that the Town's Solid Waste Ordinance does not apply to SPI's solid waste facility. (Compl. ¶¶ 72-80; Pl. Mot. Summ. J. 2.) In its motion for summary judgment, SPI argued that, pursuant to the express terms of § 1.2 of the Ordinance, the Town's Solid Waste Ordinance simply did not apply to SPI's facility because SPI was not seeking a permit from a governmental authority that had not been obtained or become final prior to the effective date of the Ordinance. (Pl. Mot. Summ. J. 22-23.) SPI also argued that the Town's interpretation of § 1.2 and § 8.1 of the Ordinance, requiring SPI to apply for a new permit for its pre-existing facility, violated the presumption against retroactive legislation. (*Id.* at 26-29.) The court rejected these arguments for the reasons stated in its March 28, 2017 order.

SPI contends that in determining whether a law may apply retroactively, the court must examine: (1) whether there was an express intent to make law retroactive; and (2) whether the retroactive application violates any provisions of the Maine Constitution. (Pl. Reply 12-13); *see MacImage of Me., LLC v. Androscoggin Cty.*, 2012 ME 44, ¶ 21, 40 A.3d 975. SPI's motion for summary judgment did not put forth any arguments regarding the constitutionality of the Ordinance's retroactive application. (Pl. Mot. Summ. J. 26-29; Pl. Reply to Mot. Summ. J. 19-24.) Thus, the court did not address the issue in its order. SPI argues that the court's entry of

summary judgment on Count V precludes it from raising any constitutional challenges to the alleged retroactive application of the Town's Ordinance. (Pl. Reply 12-13.)

Lastly, SPI argues that, because no discovery has been conducted in this action, there may be genuine issues of fact regarding Counts I, III, and V that have yet to be developed by the parties. (*Id.* at 14.)

Based on the foregoing, the court is convinced there are additional issues of law and questions of fact that SPI may be able to develop regarding Counts I, III, and V of the complaint. Those potential issues were beyond the scope of discrete issues of law raised in SPI's early motion for summary judgment. SPI should not be precluded developing and raising those issues later in this litigation. Therefore, the court will vacate its entry of summary judgment for the Town on Counts I, III, and V.

## CONCLUSION

Plaintiff Soil Preparation, Inc.'s motion for partial reconsideration is **GRANTED**. The court's entry of summary judgment in favor of Defendant Town of Plymouth on Counts I, III, and V of Plaintiff's complaint is **VACATED**.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 5/20/17

_____
Richard Mulhern
Judge, Business & Consumer Court

STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-16-32✓

SOIL PREPARATION, INC., )
)
Plaintiff, )
)
v. )
)
TOWN OF PLYMOUTH, )
)
Defendant. )

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Plaintiff Soil Preparation, Inc. ("SPI") has moved for summary judgment pursuant to Maine Rule of Civil Procedure 56 on Counts I, III, and V of its complaint. For the following reasons, SPI's motion is denied. Pursuant to Maine Rule Civil Procedure 56(c), summary judgment is entered for Defendant Town of Plymouth (the "Town") on Counts I, III, and V of SPI's complaint.

## BACKGROUND

SPI has operated a facility in Plymouth, Maine since 1995. (Pl. Supp'g S.M.F. ¶ 7; Def. Opp. S.M.F. ¶ 7.) SPI receives and processes septage, sludge, and other materials from several municipalities and quasi-municipal entities throughout Maine. (*Id.* ¶ 8.) SPI also receives and processes septage from licensed haulers. (*Id.* ¶ 9.)

SPI is subject to the authority of the Maine Department of Environmental Protection ("DEP") and its rules. (*Id.* ¶11.) There is no dispute that SPI is licensed by DEP to operate as a "Solid Waste Facility," as well as a "Solid Waste Processing Facility" and a "Waste Facility," as those terms are defined in the Maine Hazardous Waste, Septage and Solid Waste Management Act (the "Solid Waste Act"), 38 M.R.S. § 1301 *et seq.*, and DEP's Solid Waste Management Rules (the "Solid Waste Rules"), 06-096 C.M.R. ch. 400 *et seq.*[1] (*Id.* ¶ 10.)

On March 19, 2016, the Town of Plymouth (the "Town") adopted "An Ordinance Regulating Solid Waste Facilities" (the "Solid Waste Ordinance" or "Ordinance"). (*Id.* ¶ 13.) The Ordinance's stated purpose is to protect the health and safety of the Town's residence, maintain the environment, conserve natural resources, and prevent pollution by regulating the processing, storage, and land applications of municipal and industrial wastewater treatment plant sludge and other residuals, septage, and solid waste. Plymouth, Me., Solid Waste Ordinance §§ 2.1-2.2 (March 19, 2016).

Pursuant to § 7.1 of the Solid Waste Ordinance:

The following activities shall be regulated by the Town of Plymouth and shall require a permit approval by the Planning Board: establishment or operation of solid waste facilities, including land spreading of sludge and residuals, storage of sludge and residuals, land spreading and storage of septage, and composting operations.

*Id.* § 7.1. Section 8.1, entitled "New Permits," further provides:

No person shall conduct or allow on his/her property any of the activities listed in Section 7.1 without first obtaining a permit for that purpose from the Planning Board. ...

**Any existing solid waste facility operating in the Town of Plymouth as of the date of adoption of this Ordinance shall apply for a new facility permit under this Ordinance within ninety (90) days after the Ordinance's effective date.** Any existing solid waste facility in the Town that does not apply for a new facility permit under this Ordinance with in the time required shall cease all operations

---

[1] A "Solid Waste Facility" is defined as, subject to certain exceptions, any facility "used for the handling of solid waste." 38 M.R.S. § 1303-C(31); 06-096 C.M.R. ch. 400 § 1(Kkk) (Apr. 6, 2015). "Solid Waste" is defined as "useless, unwanted or discarded solid materials with insufficient liquid content to be free-flowing,..." *Id.* § 1303-C(29); *Id.* § 1(Hhh). Solid waste does not include "Septage," which is defined as "waste refuse, effluent, sludge and any other materials from septic tanks, cesspools or any other similar facilities." *Id.* § 1303-C(27), (29); *Id.* § 1(Aaa-1), (Hhh). "Sludge" is also distinguished from "solid waste." *Id.* § 1303-C(28-A); *Id.* § 1(Ggg).

A "Solid Waste Processing Facility" is defined as "a land area, structure, equipment, machine, device, system or combination thereof, other than an incineration facility, that is operated to reduce the volume or change the chemical or physical characteristics of solid waste." *Id.* § 1303-C(32-A).

A "Waste Facility" is defined as, subject to certain exceptions, "any land area, structure, location, equipment or combination of them, including dumps, used for handling hazardous, biomedical or solid waste, waste oil, sludge or septage." *Id.* § 1303-C(40.)

within the Town of Plymouth no later than six (6) months following the Ordinance's affective date.

*Id.* § 8.1 (emphasis supplied).

On or about May 9, 2016, the Town sent a letter to SPI informing it of the new Solid Waste Ordinance and instructing SPI to submit an application to the Planning Board for a new permit no later than June 20, 2016. (Pl. Supp'g S.M.F. ¶ 19; Def. Opp. S.M.F. ¶ 19; Pl. Ex. C.) SPI submitted an application for a new permit on June 17, 2016. (*Id.* ¶ 20; Pl. Ex D.) In its cover letter to the application, SPI reserved all rights, claims, and defenses as to the applicability and validity of the Ordinance. (*Id.*)

SPI filed a complaint against the Town on July 28, 2016. SPI's complaint contains seven counts for declaratory judgment challenging the validity and applicability of the Ordinance and two civil rights claims pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 38-104.) The Town answered on August 26, 2016. This matter was subsequently transferred to the Business and Consumer Court.

SPI filed a motion for summary judgment on Counts I, III, and V of its complaint on January 9, 2017. SPI request that the court enter summary judgment declaring the following: (1) that the authority the Town intends to exercise pursuant to the Solid Waste Ordinance exceeds the powers allowed by the Legislature pursuant to 38 M.R.S. § 1310-U of the Solid Waste Act (Count I); (2) that § 1310-U specifies the areas in which municipalities can impose standards, that the Ordinance exceeds those areas, and that Ordinance is therefore invalid (Count III); and (3) that, pursuant to the terms of § 1.2 of the Ordinance, the Town's Solid Waste Ordinance does not apply to SPI's pre-existing facility (Count V). (Pl. Mot. Summ. J. 2.) The Town filed its opposition on February 10, 2017.[2] SPI filed its reply on February 24, 2017.

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. Where there is no genuine dispute of material fact and the questions before the court are purely questions of law for the court, summary judgment is an appropriate device for deciding such dispositive questions. *Magno v. Town of Freeport*, 486 A.2d 137, 141 (Me. 1985). Furthermore, where there is no genuine dispute as to any material fact, the court may enter summary judgment against the moving party without the need for a cross-motion by the non-moving party. M.R. Civ. P. 56(c); 3 Harvey, *Maine Civil Practice* § 56.10 at 251 (3d ed. 2011).

Maine's Uniform Declaratory Judgment Act, 14 M.R.S. § 5951 *et seq.*, authorizes the courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 14 M.R.S. § 5953. The court may issue a declaratory judgment whenever "a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 5957. Any person whose rights, status or other legal relations are affected by a statute or municipal ordinance may seek a declaratory judgment to determine any question of interpretation or validity arising under a statute or ordinance. *Id.* § 5954. Thus, a declaratory judgment action is

---

[2] In its opposition, the Town asserts *inter alia* that 38 M.R.S. § 1305(6) of the Solid Waste Act expressly authorizes the municipality to regulate the disposal of septage and sludge. (Def. Opp'n to Pl. Mot. Summ. J. 10-14.) Although SPI receives and process septage and sludge, there is no dispute that it is licensed as a "Solid Waste Facility" by DEP. (Pl. Supp'g S.M.F. ¶¶ 8-10; Def. Opp. S.M.F. ¶¶ 8-10.) Thus, any municipal regulation of SPI as a "Solid Waste Facility" is subject to the requirements of 38 M.R.S. § 1310-U. SPI's motion seeks declaratory relief regarding the validity of the Town's Solid Waste Ordinance under only § 1310-U. (Pl. Mot. Summ. J. 2.) SPI does not seek a declaratory judgment regarding § 1305(6), and the Town has not filed a counterclaim or cross-motion seeking a declaratory judgment regarding § 1305(6). Therefore, the court's analysis is confined to whether the Town's Solid Waste Ordinance is valid under § 1310-U of the Solid Waste Act. The court does not reach or express any opinion on § 1305(6).

4

an appropriate method for challenging the validity of an ordinance as beyond the lawful authority of the municipality. *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 14, 868 A.2d 172.

Statutory interpretation is a question of law for the court. *Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262. In order to effectuate the drafters' intent, the court first looks to the plain language of the statute. *Guar. Tr. Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 17, 82 A.3d 121. In the absence of statutory definitions, the court affords statutory terms their plain, common, and ordinary meaning. *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621. All words in a statute must be given meaning. *Cent. Me. Power Co.*, 2013 ME 37, ¶ 8, 68 A.3d 1262. No words are to be treated as mere surplusage. *Id.* The court examines other indicia of the drafters' intent only when the plain language of the statute is ambiguous. *Berube v. Rust Eng'g*, 668 A.2d 875, 877 (Me. 1995).

The interpretation of local ordinances is also a question of law for the court. *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684. Like statutes, the court examines ordinances for their plain meaning and construes the terms of ordinances reasonably "in light of the purposes and objectives of the ordinance and its general structure." *Id.* ¶ 9. The court will not construe the ordinance as to create "absurd, inconsistent, unreasonable, or illogical results." *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 23, 82 A.3d 148. "An ordinance may not be interpreted in such a way to read a provision out of existence or to render it surplusage." *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 8, 946 A.2d 408. If the meaning of an ordinance is clear on its face, the court looks no further. *Rudolph*, 2010 ME 106, ¶ 9, 8 A.3d 684.

## ANALYSIS

I.      <u>38 M.R.S. § 1310-U</u>

5

As discussed above, SPI seeks a declaratory judgment that the Town's Solid Waste Ordinance exceeds the authority permitted to municipalities by the Legislature under 38 M.R.S. § 1310-U of the Solid Waste Act (Count I) and that § 1310-U specifies the areas in which municipalities can impose standards on solid waste facilities, that the Ordinance exceeds those areas, and that Ordinance is therefore invalid (Count III). (Pl. Mot. Summ. J. 2.)

SPI argues that § 1310-U expressly or by clear implication preempts municipal home rule authority to adopt ordinances regarding solid waste management. (*Id.* at 15, 18.) SPI further argues that, although § 1310-U preempts municipal authority, the statute permits municipalities to adopt ordinances the limited areas identified therein. (*Id.* at 14.) SPI argues that the Town's Solid Waste Ordinance exceeds the authority permitted to it under § 1310-U because (1) the Ordinance claims authority "coterminous" with the State's authority, (2) the Ordinance subjects existing facilities to permitting requirements by treating them like new facilities, and (3) § 8.2 and § 8.4 of the Ordinance claim *de facto* authority for the Town to enforce State and Federal enforcement and licensing decisions. (*Id.* at 19-21.)

The home rule provision of the Maine Constitution provides, "The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act." Me. Const. art. VIII, pt. 2, § 1. Maine's home rule statute further provides, "Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general

6

law or charter." 30-A M.R.S. § 3001. There is rebuttable presumption that an ordinance enacted under § 3001 is a valid exercise of a municipality's home rule authority. *Id.* § 3001(2).

Regarding preemption, § 3001 provides, "The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law." *Id.* § 3001(3). Our Law Court has stated that municipal authority will be deemed preempted only "when state law is interpreted to create a comprehensive and exclusive regulatory scheme inconsistent with the local action, or when the municipal ordinance prevents the efficient accomplishment of a defined state purpose." *Dubois Livestock, Inc. v. Town of Arundel*, 2014 ME 122, ¶ 13, 103 A.3d 556.

Our Law Court has previously addressed whether the Solid Waste Act, and specifically § 1310-U, preempts municipal authority. According to the Law Court, the Solid Waste Act "establishes a comprehensive regulatory scheme" regarding solid waste management. *Id.* ¶ 21; *see* 38 M.R.S. § 1302 (Solid Waste Act's declaration of policy); 38 M.R.S. § 1304 (DEP's authority to adopt and enforce rules governing solid waste management); 38 M.R.S. § 1310-N (DEP's authority to grant licenses for solid waste facilities).

Despite creating comprehensive regulatory scheme, § 1310-U of the Solid Waste Act provides in relevant part:

> Under the municipal home rule authority granted by the Constitution of Maine, Article VIII, Part Second and Title 30-A, section 3001, municipalities, except as provided in this section, **may enact ordinances with respect to solid waste facilities that contain standards** the municipality finds reasonable, **including, without limitation,** conformance with federal and state solid waste rules; fire safety; traffic safety; levels of noise heard outside the facility; distance from existing residential, commercial or institutional uses; ground water protection; surface water protection; erosion and sedimentation control; and compatibility of the solid waste facility with local zoning and land use controls, provided that the **standards** are not more strict than those contained in this chapter [38 M.R.S. §§ 1301-1319-Y] and in chapter 3, subchapter I, articles 5-A and 6 [38 M.R.S. §§

7

480-A-490] and the rules adopted under these articles. Municipal ordinances must use definitions consistent with those adopted by the board.

38 M.R.S. § 1310-U (emphasis supplied). According to the Law Court, "the Legislature could not state more clearly its intention not to occupy the field in waste management matters as long as the local regulation meets section 1310-U's requirements." *Dubois Livestock*, 2014 ME 122, ¶ 21, 103 A.3d 556 (internal quotation marks and citation omitted).

The Law Court further stated that the term "standards" as used in § 1310-U "relates to the quantitative levels, distances, practices, and other measurable criteria deemed necessary to prevent and contain pollution and contamination." *Id.* (internal quotation marks and citation omitted). Thus, pursuant to their home rule authority, municipalities "may regulate external impacts of solid waste management facilities, but may not impose on solid waste management facilities **stricter standards** than are contained in state law." *Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 31, 760 A.2d 257 (emphasis supplied). To determine whether the Ordinance's standards are stricter than those established in the Solid Waste Act and the DEP rules, the court must directly compare the standards in the Ordinance to those in the statute and the rules promulgated thereunder. *Dubois Livestock*, 2014 ME 122, ¶ 22, 103 A.3d 556.

In *E. Perry Iron & Metal Co., Inc. v. City of Portland*, the plaintiff had operated a scrap metal recycling facility since the 1980s. 2008 ME 10, ¶ 2, 941 A.2d 457. In 2004, the city enacted a new ordinance regulating the facility. *Id.* The plaintiff asserted that the new ordinance was preempted by the Solid Waste Act because the extensive testing requirements of the ordinance and attendant expenses made the ordinance "more strict" than the requirements of the Solid Waste Act. *Id.* ¶ 20. Assuming the Solid Waste Act and § 1310-U applied to the plaintiff's facility, The Law Court stated:

The mere fact that a local ordinance may establish a procedure that is more rigorous than the State's procedures does not, ipso facto, render [the ordinance] invalid. In contrast, if a specific provision of a local ordinance established a quantitative standard that was more strict than that provided by the Solid Waste Act, that provision would not be enforceable. In this instance, the extensive testing requirements of [the ordinance] cannot be said to be more strict than any standard established by the Solid Waste Act. They may be more extensive, and perhaps more expensive, but these factors do not constitute quantitative environmental **standards** that can be said to be more "strict" than anything prescribed by statute or rule. As the record does not reflect [ordinance] standards that are stricter than those established in the Solid Waste Act, [the ordinance] is not preempted by the Solid Waste Act.

*Id.* ¶¶ 20, 23 (emphasis in original).

In *Dubois Livestock, Inc. v. Town of Arundel*, the plaintiff operated a solid waste facility licensed by DEP. 2014 ME 122, ¶ 2, 103 A.3d 556. Pursuant to the town's ordinance, the plaintiff was also required to obtain a conditional use permit to operate its facility. *Id.* ¶ 3. In an appeal of a notice of violation, the plaintiff asserted *inter alia* that the town's ordinance was preempted by the Solid Waste Act. *Id.* ¶ 1. The Law Court held that the standards set out in the ordinance were not stricter than those imposed under the Solid Waste. *Id.* ¶ 22. The Law Court specifically noted that the ordinance's requirement that all processing facilities must be "designed, located and operated in strict compliance with" the standards set forth in the rules promulgated under the Solid Waste Act was the same as, not stricter than, the standards imposed under the Solid Waste Act. *Id.* The Court also noted that the ordinance's requirement that the facility's permit be reissued more frequently was not a stricter standard and not evidence that the ordinance does not comply with § 1310-U. *Id.* ¶ 22 n.10. The Law Court stated, "Although such a process may be more expensive for [plaintiff], such factors of 'generalized hardship' or of more rigorous procedure are not evidence that the Ordinance conflicts with State law and is therefore preempted." *Id.* (citation omitted).

9

Thus, contrary to SPI's arguments, the mere fact that the Town's Solid Waste Ordinance establishes permitting procedures coterminous with, or even more rigorous or expensive than, the Solid Waste Act and DEP's rules does not *ipso facto* render the Town's Ordinance preempted under § 1310-U. The fact that, under § 8.2 and § 8.4 of the Ordinance, the Town may refuse to issue or revoke a permit if a facility fails to correct any past violations of State or Federal permits or remedy past contamination also does not render the Ordinance preempted under § 1310-U. *See* Plymouth, Me., Solid Waste Ordinance §§ 8.2, 8.4.

A municipal ordinance is preempted under § 1310-U of the Solid Waste Act only if the "standards" contained in the ordinance, i.e., the "quantitative levels, distances, practices, and other measurable criteria deemed necessary to prevent and contain pollution and contamination," are stricter than those contained in the Solid Waste Act or rules promulgated thereunder. *Dubois Livestock*, 2014 ME 122, ¶ 21, 103 A.3d 556. SPI has not identified any quantitative levels, distances, practices, and other measurable criteria in the Ordinance that can be said to be more "strict" than those proscribed by the Solid Waste Act or DEP's Solid Waste Rules, rendering the Ordinance preempted.

Moreover, contrary to SPI's assertion, § 1310-U does not limit the areas in which a municipality may impose standards on solid waste facilities. Though § 1310-U does list certain areas in which a municipality may enact standards, the list is directly preceded by the statement that a municipality "may enact ordinances with respect to solid waste facilities that contain standards the municipality finds reasonable, **including, without limitation,...**" 38 M.R.S. § 1310-U (emphasis supplied). This express language makes clear that the list in § 1310-U is neither exclusive nor exhaustive. By the plain terms § 1310-U, a municipality may enact any

10

standards it finds reasonable, provided that the standards are not more strict than those contained in either the Solid Waste Act or DEP's rules. *Id.*

Therefore, because SPI has failed to demonstrate that the Town's Solid Waste Ordinance exceeds the authority permitted under § 1310-U of the Solid Waste Act, rending the Ordinance preempted, SPI's motion for summary declaratory judgment on Counts I and III of its complaint must be denied.

Furthermore, the Town is entitled to summary judgment in its favor pursuant to Maine Rule of Civil Procedure 56(c). Not only has SPI's failed to identify any standards in the Town's Solid Waste Ordinance that exceed § 1310-U's requirements, the Ordinance also contains a saving clause, which states:

> Whenever the requirements of this Ordinance are inconsistent with the requirements of any other Ordinance Code, or Statute, the more restrictive requirements shall apply; provided that no requirement is more restrictive than the standards contained in Title 38 M.R.S.A. Chapter 13 [§§ 1301-1319-Y.] and in Chapter 3, subchapter I, articles 5-A and 6 [§§ 480-A-490] and the rules adopted under these articles.

Plymouth, Me., Solid Waste Ordinance § 3.2. Because there is no genuine dispute as to any material facts in this case, because SPI has failed to identify any standards in the Town's Solid Waste Ordinance that exceed § 1310-U's requirements, and because the Ordinance contains a savings clause providing that no provisions in the Ordinance shall exceed requirements of § 1310-U, the Town is entitled to summary judgment on Counts I and III declaring that the Town's Solid Waste Ordinance does not exceeds limits on municipal authority set forth in 38 M.R.S. § 1310-U, and is therefore not preempted.

II.   **Terms of the Ordinance**

11

Alternatively, SPI seeks a declaratory judgment that the Town's Solid Waste Ordinance, by its own terms, does not apply to SPI's pre-existing facility (Count V). (Pl. Mot. Summ. J. 2.) Section 1.2 of the Ordinance provides:

> The provisions of this Ordinance shall govern all land and all structures within the boundaries of the Town of Plymouth; and, shall supplement the Land Use Ordinance, Wellhead Protection Ordinance, and Shoreland Zoning Ordinance of the Town
>
> To the extent permitted by law, notwithstanding M.R.S.A. Title 1, § 302, the provisions of this Ordinance shall apply to all applications, projects and activities for which any building or land use permit or other required permits of any governmental authority had not been obtained and become final prior to the effective date hereof.

Plymouth, Me., Solid Waste Ordinance § 1.2.

SPI argues that, pursuant express terms of § 1.2, the Town's Solid Waste Ordinance does not apply to SPI's facility because SPI was not seeking a permit from a governmental authority that had not been obtained or become final prior to the effective date of the Ordinance. (Pl. Mot. Summ. J. 22-23); *see* (Pl. Supp'g S.M.F. ¶¶ 37-38; Def. Opp. S.M.F. ¶¶ 37-38.) SPI argues that § 8.1's mandate that "any existing solid waste facility operating in the Town of Plymouth as of the date of adoption of this Ordinance shall apply for a new facility permit," is in direct conflict with the second paragraph of § 1.2. (Pl. Mot. Summ. J. 24.) SPI also argues that the Town's interpretation of § 1.2 and § 8.1 as requiring SPI to apply for a new permit for its pre-existing facility violates the presumption against retroactive legislation. (*Id.* at 26-29.)

Foremost, the court finds no conflict between § 1.2 and § 8.1. As discussed above, when interpreting an ordinance, the court must give meaning to each provision of the ordinance. *Jade Realty Corp.*, 2008 ME 80, ¶ 8, 946 A.2d 408. No provision may be rendered as surplusage. *Id.* The Court must avoid any interpretation that creates "absurd, inconsistent, unreasonable, or illogical results." *Duffy*, 2013 ME 105, ¶ 23, 82 A.3d 148. The second paragraph of § 1.2

12

contains a general pronouncement that the Town's Solid Waste Ordinance applies to any projects and activities for which a permit from any governmental authority is required that "had not been obtained and become final" prior to the effective date of the Ordinance. Plymouth, Me., Solid Waste Ordinance § 1.2. Thus, by its plain terms, the second paragraph of § 1.2 encompasses only projects or activities with pending and final applications for permits from governmental authorities. The second paragraph of § 8.1, on the other hand, applies to "any existing solid waste facility" operating as of the date of adoption of the Ordinance and requires existing solid waste facilities to file an initial application for a "new facility permit." *Id.* § 8.1.

Because the second paragraph of § 1.2 and the second paragraph of § 8.1 deal with different topics, projects or activities with pending applications versus existing solid waste facilities, there is no conflict and the two provisions may be read in harmony. Moreover, SPI's interpretation of § 1.2 as prohibiting the application of the Ordinance to existing solid waste facility would impermissibly render § 8.1 surplusage, creating an absurd and illogical result.

Pursuant to the plain terms of both § 1.2 and § 8.1, the Town's Solid Waste Ordinance applies to SPI's pre-existing facility. SPI's interpretation ignores the first paragraph of § 1.2 which plainly states, "The provisions of this Ordinance shall govern **all land and all structures** within the boundaries of the Town of Plymouth;..." *Id.* § 1.2 (emphasis supplied). Thus, the provisions of the Solid Waste Ordinance are not limited to proposed structures and activities with pending permit applications. Under the plain terms of both § 1.2 and § 8.1, the Town's Solid Waste Ordinance governs "all land and all structures" within the Town, including existing solid waste facilities. Therefore, the Ordinance applies to SPI's pre-existing solid waste facility.

Lastly, contrary to SPI's argument, the application of the Solid Waste Ordinance to SPI's pre-existing facilities does not violate the presumption against retroactive legislation. Title 1

13

M.R.S. § 302 provides in the relevant part, "Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." Our Law Court has stated, "By operation of 1 M.R.S. § 302, an ordinance is not retroactive,..." *Lane Constr. Corp. v. Town of Washington*, 2007 ME 31, ¶ 6, 916 A.2d 973. However, § 302 may be overridden if the ordinance "clearly and unequivocally" provides for retroactive application. *Id.* "A municipality may go a long way toward demonstrating a clear and unequivocal expression of retroactivity by referring specifically to section 302, as in, 'notwithstanding the provisions of 1 M.R.S. § 302'; or stating that the ordinance is retroactive to a certain date or 'applies retroactively.'" *Id.* (internal citation omitted).

Sections 1.2 and 8.1 clearly and unequivocally provide for the retroactive application of the Solid Waste Ordinance. As discussed above, § 1.2 states:

> To the extent permitted by law, **notwithstanding M.R.S.A. Title 1, § 302**, the provisions of this Ordinance shall apply to all applications, projects and activities for which any building or land use permit or other required permits of any governmental authority had not been obtained and become final prior to the effective date hereof.

Plymouth, Me., Solid Waste Ordinance § 1.2 (emphasis supplied). By referencing 1 M.R.S. § 302, § 1.2 clearly and unequivocally demonstrates the Town's intent to apply the provision of the Ordinance retroactively to all any projects and activities for which a permit from any governmental authority is required that "had not been obtained and become final" prior to the effective date of the Ordinance. However, because there is no dispute that SPI was not seeking a permit from any governmental authority as of the effective date of the Ordinance, the retroactive application provision of § 1.2 does not apply to SPI's facility. *See* (Pl. Supp'g S.M.F. ¶¶ 37-38; Def. Opp. S.M.F. ¶¶ 37-38.)

14

Section 8.1, on the other hand, does apply to SPI's pre-existing solid waste facility. Section 8.1 clearly and unequivocally states:

> Any existing solid waste facility operating in the Town of Plymouth as of the date of adoption of this Ordinance shall apply for a new facility permit under this Ordinance within ninety (90) days after the Ordinance's effective date.

*Id.* § 8.1. Although the § 8.1 does not employ the term "retroactive," the plain language of § 8.1 clearly and unequivocally demonstrates that the Town intended the newly enacted Solid Waste Ordinance to apply retroactively to pre-existing solid waste facilities not previously subject to municipal permitting requirements. Therefore, application of the Solid Waste Ordinance to SPI's pre-existing solid waste facility does not violate the presumption against retroactive legislation.

Accordingly, SPI's motion for summary judgment on Count V of its complaint for declaratory judgment must be denied. Furthermore, because there are no genuine issues of material fact, the Town is entitled to summary judgment in its favor on Count V of SPI's complaint. *See* M.R. Civ. P. 56(c).

## CONCLUSION

Plaintiff Soil Preparation, Inc.'s motion for summary judgment on Counts I, III, and V of its complaint is **DENIED**. Pursuant to Maine Rule Civil Procedure 56(c), summary judgment is **GRANTED** for Defendant Town of Plymouth on Counts I, III, and V.

The Court enters declaratory judgment as follows:

(1) On Count I, Defendant Town of Plymouth's Ordinance Regulating Solid Waste Facilities does not exceed the authority permitted to municipalities under 38 M.R.S. § 1310-U and is not preempted.

15

(2) On Count III, 38 M.R.S. § 1310-U does not limit the areas in which Defendant Town of Plymouth may impose standards on solid waste facilities. The Town of Plymouth's Ordinance Regulating Solid Waste Facilities did not exceed the requirements of 38 M.R.S. § 1310-U and is not preempted.

(3) On Count V, by its terms, Defendant Town of Plymouth's Ordinance Regulating Solid Waste Facilities applies to Plaintiff Soil Preparation, Inc.'s pre-existing solid waste facility.

All other Counts in the complaint remain pending.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 3/28/17

_____
Richard Mulhern
Judge, Business & Consumer Court

**SOIL PREPARATION, INC. v.**
**TOWN OF PLYMOUTH**

**BCD-CV-2016-32**


Soil Preparation, Inc.                    Edmond Bearor, Esq.
                                          84 Harlow St
                                          PO Box 1401
                                          Bangor, ME 04402


Town of Plymouth                          Timothy Woodcock, Esq.
                                          80 Exchange St
                                          PO Box 1210
                                          Bangor, ME 04402